**Robert A. Shlachter,** OSB No. 911718
Email: rshlachter@stollberne.com
**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Jacob S. Gill**, OSB No. 033238
Email: jgill@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Joel R. Feldman** (Application pending *pro hac vice*)
Greenberg Traurig, LLP
3290 Northside Parkway, Ste. 400
Atlanta GA  30327
Telephone:  678.553.4778
Facsimile: 678.553.4779
Email:  feldmanjoel@gtlaw.com

**Attorneys for Defendant CrossFit, Inc.**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SPORTSGRANTS, INC., an Oregon corp., | Case No. CV-12-0196-SI |
| Plaintiff, | |
| v. | |
| CROSSFIT, INC., a Delaware corp., and DOES 1 through 10, inclusive, | **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.** |
| Defendants, | |
| CROSSFIT, INC., | |
| Defendant/Counterclaim Plaintiff, | |
| v. | |
| SPORTSGRANTS, INC., | |
| Counterclaim Defendant. | |

**PAGE 1 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
        DEFENDANT CROSSFIT, INC.**

Defendant CROSSFIT, INC. ("CrossFit") alleges:

1.

Paragraph 1 does not contain any allegations of fact and, on that basis, paragraph 1 is denied.

2.

Paragraph 2 does not contain any allegations of fact and, on that basis, paragraph 2 is denied.

3.

CrossFit denies that a substantial part of the events giving rise to Sportsgrants' claims arose in Oregon.  CrossFit lacks knowledge and information sufficient to form a belief as to the truth of the allegation that Plaintiff's principal place of business is located in Oregon and therefore denies this allegation.  All other allegations of paragraph 3 are not allegations of fact and, on that basis, are denied.

4.

CrossFit lacks sufficient information or knowledge to respond to the allegations asserted against other Defendants and, on that basis, denies those allegations.  CrossFit admits that it has supported CrossFit Affiliates within the State of Oregon, and denies all other allegations of paragraph 4..

5.

CrossFit admits that Plaintiff is an Oregon corporation.  Except as expressly admitted, CrossFit lacks knowledge and information sufficient to form a belief as to the truth of the allegations and therefore denies the remaining allegations of paragraph 5.

6.

CrossFit admits that CrossFit is a Delaware corporation.  All other allegations of paragraph 6 are denied.

**PAGE 2 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
         DEFENDANT CROSSFIT, INC.**

7.

CrossFit lacks sufficient information or knowledge to respond to the allegations asserted in paragraph 7 and, on that basis, denies the allegations of paragraph 7.

8.

CrossFit denies the allegations of paragraph 8.

9.

CrossFit admits that its business includes, but is not limited to, the services alleged in paragraph 9.

10.

CrossFit admits that its affiliates are independently owned and operated subject to their contractual obligations to CrossFit as licensees of the CROSSFIT mark and other marks.  All other allegations of paragraph 10 are denied or are not allegations of fact, and, on that basis, are denied.

11.

CrossFit admits that Scott Zagarino is the founder and Chief Executive Officer of Sportsgrants.  All other allegations of paragraph 11 are denied.  Because CrossFit denies that all acts alleged in the paragraphs below were done by Mr. Zagarino in his capacity as Chief Executive Officer of Sportsgrants, acts alleged below to have been done by Mr. Zagarino are answered with respect to Mr. Zagarino personally.

12.

CrossFit lacks sufficient information or knowledge to respond to the allegations asserted in paragraph 12, on that basis, denies the allegations of paragraph 12.

13.

CrossFit admits that Mr. Zagarino has been involved with certain fundraising events. CrossFit lacks sufficient information or knowledge to respond to the remaining allegations of paragraph 13, on that basis, denies those allegations.

**PAGE 3 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

14.

CrossFit lacks sufficient information or knowledge to respond to the allegations asserted in paragraph 14, on that basis, denies the allegations of paragraph 14.

15.

CrossFit admits that CrossFit introduced the "Fight Gone Bad" workout and that the "Fight Gone Bad" workout was utilized by CrossFit Affiliates prior to the events alleged in paragraph 15.  CrossFit denies that Mr. Zagarino came up with the idea to create a fundraising event whereby athletes could collectively dedicate one day of the year to fundraising for charity by collecting donations online.  CrossFit lacks sufficient information or knowledge to respond to the remaining allegations asserted in paragraph 15, on that basis, denies the remaining allegations of paragraph 15.

16.

CrossFit denies the allegations of paragraph 16.

17.

CrossFit admits that a CrossFit "Fight Gone Bad" charity event was held in September 2006 and that Mr. Zagarino was involved on behalf of a co-sponsor, Athletes for a Cure. CrossFit denies the remaining allegations of paragraph 17.

18.

CrossFit admits that the "Fight Gone Bad" workout was a featured aspect of the event. CrossFit denies the remaining allegations of paragraph 18.

19.

CrossFit admits that its CrossFit "Fight Gone Bad" event in September 2006 was held at Affiliate Gyms, involved numerous participants and raised substantial money for charity. CrossFit lacks sufficient information or knowledge to confirm or deny the accuracy of the approximate numbers alleged in paragraph 19 or to admit or deny that all of the money raised was donated to charity and, on that basis, denies the remaining allegations of paragraph 19.

**PAGE 4 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
          DEFENDANT CROSSFIT, INC.**

20.

CrossFit denies the allegations of paragraph 20.

21.

CrossFit admits that the first CrossFit Fight Gone Bad event was successful.  CrossFit lacks sufficient information or knowledge to respond to the allegations asserted in paragraph 21 and, on that basis, denies the allegations of paragraph 21.

22.

According to the records of the State of Oregon, Mr. Zagarino formed Sportsgrants, Inc. on or about January 29, 2008 and, on that basis, CrossFit denies the allegations of paragraph 22.

23.

CrossFit admits that a CrossFit Fight Gone Bad charity event took place in September 2007 at Affiliate Gyms, that Mr. Zagarino was involved with the event and that the event involved numerous participants and raised substantial money for charity, and that donations were collected online.  CrossFit lacks sufficient information or knowledge to confirm or deny the accuracy of the approximate numbers alleged in paragraph 23 and, on that basis, denies those allegations.  CrossFit denies the remaining allegations of paragraph 23.

24.

CrossFit denies the allegations of paragraph 24.

25.

CrossFit admits that there were communications between CrossFit and Mr. Zagarino prior to the September 2008 CrossFit Fight Gone Bad charity event.  CrossFit denies the remaining allegations of paragraph 25.

26.

CrossFit admits that a CrossFit Fight Gone Bad charity event took place in September 2008 at Affiliate Gyms, that Mr. Zagarino was involved with the event and that the event involved numerous participants and raised substantial money for charity.  CrossFit lacks

**PAGE 5 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
                 DEFENDANT CROSSFIT, INC.**

sufficient information or knowledge to confirm or deny the accuracy of the approximate numbers alleged in paragraph 26 and, on that basis, denies those allegations.  CrossFit denies the remaining allegations of paragraph 26.

27.

CrossFit denies the allegations of paragraph 27.

28.

CrossFit admits that it contacted Mr. Zagarino and that Mr. Zagarino has been involved with CrossFit Foundation.  CrossFit denies the remaining allegations of paragraph 28.

29.

CrossFit admits that a CrossFit Fight Gone Bad charity event took place in September 2009 at Affiliate Gyms, that Mr. Zagarino was involved with the event and that the event involved numerous participants and raised substantial money for charity.  CrossFit lacks information or knowledge sufficient to confirm or deny the accuracy of the approximate numbers alleged in paragraph 29 and, on that basis, denies those allegations.  CrossFit denies the remaining allegations of paragraph 29.

30.

CrossFit admits that it publicized and promoted the September 2009 CrossFit Fight Gone Bad charity event, including on its website and Facebook page.  CrossFit denies the remaining allegations of paragraph 30.

31.

CrossFit denies the allegations of paragraph 31.

32.

CrossFit denies the allegations of paragraph 32.

33.

CrossFit admits the allegations of paragraph 33.

**PAGE 6 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

34.

CrossFit denies the allegations of paragraph 34.

35.

CrossFit denies the allegations of paragraph 35.

36.

CrossFit admits that a CrossFit Fight Gone Bad charity event took place in September 2010 at Affiliate Gyms and that the event involved numerous participants and raised substantial money for charity.  CrossFit lacks sufficient information or knowledge to confirm or deny the approximate numbers alleged in paragraph 36 and, on that basis, denies those allegations. CrossFit denies all other allegations of paragraph 36.

37.

CrossFit admits that it publicized, promoted and advertized the September 2010 CrossFit Fight Gone Bad charity event, including on a blog and its Facebook page.  CrossFit denies the remaining allegations of paragraph 37.

38.

CrossFit admits that on August 23, 2011, the U.S. Patent and Trademark Office issued U.S. Service Mark Registration No. 4,017,046 for the mark FIGHT GONE BAD in International Class 35 for charitable services, namely, organizing and conducting charitable athletic events that promote public awareness of the importance of fundraising for charities and in International Class 36 for charitable services, namely, organizing and conducting athletic fundraising events for charities, and that a copy of the registration is reflected in Exhibit A to the Complaint. Except as expressly admitted, CrossFit denies the allegations of paragraph 38.

39.

CrossFit admits that Scott Zagarino was elected as the Executive Director of the CrossFit Foundation on January 6, 2011 and served in this position until his written resignation on June 24, 2011.  Except as expressly admitted, CrossFit denies the allegations of paragraph 39.

**PAGE 7 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

40.

CrossFit admits that a CrossFit Fight Gone Bad charity event took place in September 2011 at Affiliate Gyms and that the event included numerous participants and raised substantial money for charity.  CrossFit lacks sufficient information or knowledge to confirm or deny the approximate numbers alleged in paragraph 40 and, on that basis, denies those allegations. CrossFit denies the remaining allegations of paragraph 40.

41.

CrossFit lacks sufficient information or knowledge to respond to the allegations asserted in paragraph 41, on that basis, denies the allegations of paragraph 41.

42.

CrossFit denies that the "Fight Gone Bad® charity event" was created and produced by Sportsgrants.  CrossFit lacks sufficient information or knowledge to respond to the remaining allegations asserted in paragraph 42, on that basis, denies all allegations of paragraph 42.

43.

CrossFit admits that Sportsgrants sent letters to two of its affiliates demanding that the affiliates stop using the term FIGHT GONE BAD.  Except as expressly admitted, CrossFit denies the allegations of paragraph 43.

44.

CrossFit admits the allegations of paragraph 44.

45.

CrossFit admits that it has informed its affiliates that it has terminated its relationship with Sportsgrants and that CrossFit has provided information about a 2012 CrossFit Fight Gone Bad charity event.  CrossFit denies the remaining allegations of paragraph 45.

PAGE 8 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
             DEFENDANT CROSSFIT, INC.

46.

CrossFit admits that it was aware of Sportsgrants' licensed use of the FIGHT GONE BAD mark from 2009 through 2011. Except as expressly admitted, CrossFit denies the allegations of paragraph 46.

47.

CrossFit admits that it does not have (or need) Sportsgrants' permission or consent to use the FIGHT GONE BAD mark. CrossFit admits that it has used and currently uses the FIGHT GONE BAD mark. Except as expressly admitted, CrossFit denies the allegations of paragraph 47.

48.

CrossFit incorporates its responses to each and every allegation contained above with the same force and effect as if fully set forth herein.

49.

CrossFit denies the allegations of paragraph 49.

50.

CrossFit admits that, from 2009 through 2011, Sportsgrants used CrossFit's FIGHT GONE BAD mark with the permission of CrossFit, which permission has been revoked. CrossFit denies the remaining allegations of paragraph 50.

51.

CrossFit admits that the FIGHT GONE BAD mark is widely recognized within the CrossFit community all over the world. CrossFit denies that the FIGHT GONE BAD mark has come to be a symbol of Sportsgrants' global fundraising efforts. CrossFit lacks sufficient information or knowledge to respond to the remaining allegations asserted in paragraph 51, on that basis, denies the remaining allegations of paragraph 51.

52.

CrossFit denies the allegations of paragraph 52.

**PAGE 9 -   ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
        DEFENDANT CROSSFIT, INC.**

53.

CrossFit denies the allegations of paragraph 53.

54.

CrossFit admits that Sportsgrants has made requests to CrossFit and provided notice of the registration reflected in Exhibit A to the Complaint.  CrossFit denies the remaining allegations of paragraph 54.

55.

CrossFit denies the allegations of paragraph 55.

56.

CrossFit denies the allegations of paragraph 56.

57.

CrossFit denies the allegations of paragraph 57.

58.

CrossFit denies the allegations of paragraph 58.

59.

CrossFit denies the allegations of paragraph 59.

60.

CrossFit incorporates its responses to each and every allegation contained above with the same force and effect as if fully set forth herein.

61.

CrossFit denies the allegations of paragraph 61.

62.

CrossFit denies the allegations of paragraph 62.

63.

CrossFit denies the allegations of paragraph 63.

**PAGE 10 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

64.

CrossFit incorporates its responses to each and every allegation contained above with the same force and effect as if fully set forth herein.

65.

CrossFit denies the allegations of paragraph 65.

66.

CrossFit denies the allegations of paragraph 66.

67.

CrossFit denies the allegations of paragraph 67.

68.

CrossFit incorporates its responses to each and every allegation contained above with the same force and effect as if fully set forth herein.

69.

CrossFit denies the allegations of paragraph 69.

70.

CrossFit denies the allegations of paragraph 70.

71.

CrossFit denies the allegations of paragraph 71.

72.

CrossFit denies the allegations of paragraph 72.

73.

CrossFit denies the allegations of paragraph 73.

74.

CrossFit denies the allegations of paragraph 74.

**PAGE 11 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

75.

CrossFit incorporates its responses to each and every allegation contained above with the same force and effect as if fully set forth herein.

76.

CrossFit denies the allegations of paragraph 76.

77.

CrossFit denies the allegations of paragraph 77.

78.

CrossFit denies the allegations of paragraph 78.

**AFFIRMATIVE DEFENSES**

CrossFit alleges the following affirmative defenses:

79.

The Complaint fails to state a claim upon which relief can be granted.

80.

Plaintiff's claims are barred by the doctrine of waiver.

81.

Plaintiff is not the owner of any FIGHT GONE BAD trademark.

82.

Plaintiff's claims are barred because the alleged trademark rights in the registration reflected in Exhibit A to the Complaint were improperly granted, have been misused, and are otherwise invalid and unenforceable.

83.

CrossFit's use of FIGHT GONE BAD is prior to any alleged use by Plaintiff, and CrossFit is the owner of FIGHT GONE BAD.

**PAGE 12 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

84.

All alleged uses by Plaintiff of FIGHT GONE BAD were with the permission of, and pursuant to a license by, CrossFit, which permission and license have been terminated and revoked.

85.

The claims made in the Complaint are barred, in whole or in part, by the doctrine of fair use, nominative fair use and/or descriptive use.  The term Fight Gone Bad may be used to describe CrossFit's proprietary workout even in the context of fundraising.

86.

The claims made in the Complaint are barred, in whole or in part, because infringement, if any, was innocent.  CrossFit used its Fight Gone Bad mark and allowed its licensees to use the Fight Gone Bad mark on the basis of CrossFit's good-faith belief that it was the owner of the mark based on prior and continuous use of the mark.

87.

Each of the purported claims set forth in this Complaint is barred by the doctrines of acquiescence, and estoppel.  Scott Zagarino and Sportsgrants have acted in a manner consistent with receipt of a license of the Fight Gone Bad mark from CrossFit, including requesting permission to use the mark and sending a draft license of the mark to CrossFit for consideration.

88.

The claims made in this Complaint are barred, in whole or in part, because Sportsgrants' damages were not caused by CrossFit's use of the Fight Gone Bad mark.

89.

The claims made in this Complaint are barred, in whole or in part, by the doctrine of unclean hands.  Sportsgrants and Scott Zagarino have engaged in a calculated plan to defraud CrossFit of its ownership of the Fight Gone Bad mark and hijack the right to use the mark.  In addition, Scott Zagarino used his involvement with the CrossFit Foundation, both as a volunteer

**PAGE 13 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

and advisor and later as the executive director, to conceal his actions that were detrimental to CrossFit and the CrossFit Foundation.  As an example, Scott Zagarino was appointed as the Executive Director of the CrossFit Foundation on January 6, 2011.  Sportsgrants' federal service mark application to register Fight Gone Bad was published for opposition on January 25, 2011. Scott Zagarino did not act in the best interests of the CrossFit Foundation by failing to oppose the Fight Gone Bad application despite actual knowledge of a service mark application that was detrimental to the CrossFit Foundation's interests.

90.

The claims made in the Complaint are barred, in whole or in part, by the First Amendment to the Constitution of the United States.  CrossFit is permitted, under the First Amendment to the Constitution of the United States, to express its disapproval of Sportsgrants and its actions.

91.

The claims made in this Complaint are barred, in whole or in part, by fraud on the United States Patent & Trademark Office.  As fully alleged and set forth in CrossFit's counterclaim for cancellation of U.S. Reg. No. 4,017,046, Sportsgrants fraudulently induced the United States Patent & Trademark Office to issue the registration based on a fraudulent claim of ownership, fraudulent first-use date, and fraudulent declaration of exclusivity.

92.

The claims made in the Complaint are barred, in whole or in part, by other parties' use of the Fight Gone Bad mark at issue.  Upon information and belief, Sportsgrants did not license the Fight Gone Bad mark to CrossFit's affiliates nor did Sportsgrants control the quality of CrossFit's affiliates use of the Fight Gone Bad mark.

93.

The claims made in the Complaint are barred, in whole or in part, by the doctrine of unjust enrichment.  Sportsgrants will be unjustly enriched by receiving the goodwill of the Fight

**PAGE 14 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

Gone Bad mark that has accrued as a result of the use of the mark in connection with CrossFit-branded services.

94.

The claims made in this Complaint are barred, in whole or in part, because CrossFit is not liable for the acts of others over whom it has no control.

## COUNTERCLAIMS

## <u>GENERAL ALLEGATIONS</u>

<u>History of the CrossFit Brand</u>

95.

In the 1980s, Greg Glassman created an exercise methodology that combined various gymnastics-type exercises with weightlifting, sprinting, power lifting, rowing, and medicine ball training.  Greg Glassman called this exercise methodology "CrossFit."

96.

After developing the CrossFit methodology, Greg Glassman provided his CrossFit-branded training methods as a personal trainer and fitness instructor to numerous athletes, military agencies, law enforcement agencies, and individuals.

97.

In 1995, Greg Glassman opened the first CrossFit-branded gym in Santa Cruz, California.

98.

In 2001, Greg Glassman launched www.crossfit.com, a website the featured information about the CrossFit methodology, nutritional information, and a "workout of the day" (also known as a "WOD"), including a scoring or ranking methodology for the workout.  The website also offered access to the *CrossFit Journal*, which includes scholarly and lay articles about the CrossFit methodology, health, wellness, and nutrition.

**PAGE 15 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

99.

The goal of the www.crossfit.com website is to disseminate open-source fitness information, so that anyone can participate in the workout of the day.  For this reason, most information on www.crossfit.com is publicly available at no charge.

100.

In 2002, Greg Glassman began certifying other individuals in the CrossFit methodology and proper training techniques to expand the methodology and allow people worldwide to participate in supervised CrossFit training.  The first and most basic level of CrossFit certification is known as Level 1 or L1 certification.

101.

Greg Glassman allowed CrossFit-certified trainers to operate licensed CrossFit affiliates.

102.

Each CrossFit affiliate is permitted to operate one domain name containing the CrossFit mark.  The domain name is licensed to the CrossFit affiliate and must be returned to CrossFit upon disaffiliation.  For example, CrossFit Portland uses the domain name www.crossfitportland.com.

103.

In 2005, the number of CrossFit affiliates reached 13.

104.

Today, there are over 3,500 CrossFit affiliates worldwide.

105.

Because many people use the CrossFit methodology without attending a CrossFit affiliate, and because CrossFit offers many services other than its CrossFit affiliate services, such as the *CrossFit Journal*, CrossFit Games, and CrossFit-branded apparel, within the www.crossfit.com website, CrossFit operates a separate blog with information relevant to its affiliates.  The CrossFit affiliate blog is located at http://www.crossfit.com/cf-affiliates.

**PAGE 16 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

CrossFit's Corporate History and Ownership of Intellectual Property

106.

On April 29, 2004, Greg Glassman and Lauren Glassman formed CrossFit, Inc. ("CrossFit CA") as a California corporation and assigned all CrossFit-related intellectual property to CrossFit CA.

107.

On May 20, 2004, CrossFit CA, as a successor in interest to Greg Glassman's service mark rights, filed U.S. Application Serial No. 78422177 to register the service mark CROSSFIT in International Class 41 for fitness training.

108.

On October 18, 2005, the USPTO issued U.S. Reg. No. 3,007,458 for CROSSFIT in International Class 41 for fitness training.  A copy of the registration certificate is attached as Exhibit 1.

109.

On December 29, 2008, Greg Glassman and Lauren Glassman formed CrossFit, Inc. ("CrossFit DE") as a Delaware corporation.

110.

On April 25, 2011, CrossFit CA assigned all of its trademark and service mark rights to CrossFit DE.  CrossFit DE recorded this assignment with the USPTO.

111.

CrossFit CA (as successor in interest to Greg Glassman) and CrossFit DE (as successor in interest to CrossFit CA) are referred to collectively as "CrossFit" in this Counterclaim section.

History of the Fight Gone Bad Brand

112.

One of CrossFit's signature workouts of the day is named "Fight Gone Bad."  The workout was designed by Greg Glassman in the late 1990s for mixed martial arts fighter BJ Penn

**PAGE 17 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

to simulate the pacing of a mixed martial arts bout by alternating five minutes of work with one minute of rest.

### 113.

In December 2002, Greg Glassman published his "Fight Gone Bad" workout in an issue of his print and electronic publication the *CrossFit Journal*.

### 114.

On December 1, 2004, CrossFit presented "Fight Gone Bad" as the workout of the day on www.crossfit.com.

### 115.

Since 2004, the "Fight Gone Bad" workout has been included in CrossFit's Level 1 certification classes.

### 116.

Because of the prominence of the "Fight Gone Bad" workout within the CrossFit methodology, the Fight Gone Bad mark is associated with CrossFit.  Accordingly, CrossFit has common-law rights in the Fight Gone Bad mark since at least December 2002.

### 117.

The Fight Gone Bad workout is commonly referred to in the shorthand "FGB" in the CrossFit community.

### 118.

On August 17, 2006, CrossFit Fairfax held a "Fight Gone Bad" fundraiser on behalf of two fallen Fairfax County police officers.  Information about the fundraiser appeared on CrossFit's affiliate page at http://www.crossfit.com/cf-affiliates/2006/08/thursday_060817.html. *See* Exhibit 2.

**PAGE 18 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

119.

In the CrossFit Fairfax "Fight Gone Bad" fundraiser, members of the CrossFit Fairfax affiliate participated in the Fight Gone Bad workout and donated money to support the injured police officers.

120.

Two days later, on August 19, 2006, CrossFit Weekend Warriors, a CrossFit affiliate in San Diego, California, held a "1st Annual Summer Challenge & Testicular Cancer Benefit" fundraiser to raise money for men suffering from testicular cancer. The fundraising event included contests in two of CrossFit's well-known workouts, "Fran," and "Helen." *See* Exhibit 3.

<u>CrossFit's License of Marks to Athletes For A Cure</u>

121.

In 2006, CrossFit licensed to Athletes For A Cure ("AFAC") the CrossFit and Fight Gone Bad marks for use in connection with charitable fundraising events to be conducted through CrossFit's licensed affiliates under the supervision of CrossFit's certified trainers. CrossFit's license was based on AFAC's representation that it would contact affiliates directly to solicit participation in the CrossFit-licensed event and CrossFit's belief that the event would not interfere with CrossFit's primary business of providing fitness services through its affiliates and www.crossfit.com.

122.

Various CrossFit affiliates participated in the "CrossFit Fight Gone Bad" event on September 30, 2006. Members of CrossFit affiliates were able to donate money to AFAC through the website athletes.kintera.org. *See* Exhibit 4. Participants in the CrossFit Fight Gone Bad event competed in the Fight Gone Bad workout.

**PAGE 19 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

123.

Information about CrossFit Fight Gone Bad appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on September 14, 2006, September 19, 2006, and September 30, 2006. *See* Exhibit 5. These postings were placed on the CrossFit affiliate blog by CrossFit.

124.

Information about CrossFit Fight Gone Bad also appeared on the main www.crossfit.com page on September 30, 2006 in the form of a link to the CrossFit affiliate blog. *See* Exhibit 6. This link was posted by CrossFit cofounder and co-owner Lauren Glassman.

125.

CrossFit affiliates were also allowed to post information about CrossFit Fight Gone Bad on their licensed domain names, and most participating CrossFit affiliates did.

126.

In 2007, CrossFit again licensed to AFAC the CrossFit and Fight Gone Bad marks for use in connection with charitable fundraising events to be conducted through CrossFit's licensed affiliates under the supervision of CrossFit's certified trainers. CrossFit's license was based on AFAC's representation that it would contact affiliates directly to solicit participation in the CrossFit-licensed event.

127.

AFAC posted information about "CrossFit Fight Gone Bad II" on the website www.athletesforacure.org/events/crossfit.

128.

Various CrossFit affiliates participated in the "CrossFit Fight Gone Bad II" event on September 29, 2007. Members of CrossFit affiliates were able to donate money to AFAC through the website athletes.kintera.org. Participants in the CrossFit Fight Gone Bad II event competed in the Fight Gone Bad workout.

**PAGE 20 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

129.

Information about CrossFit Fight Gone Bad II appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on September 29, 2007 and October 3, 2007. *See* Exhibit 7. These postings were placed on the CrossFit affiliate blog by CrossFit.

130.

CrossFit affiliates were also allowed to post information about CrossFit Fight Gone Bad II on their licensed domain names, and most participating CrossFit affiliates did.

131.

In March 2008, CrossFit decided to form a non-profit foundation, the CrossFit Foundation, to channel its growing philanthropic efforts. CrossFit employee Joshua Murphy contacted Scott Zagarino to request his assistance in forming CrossFit's non-profit foundation.

132.

In 2008, CrossFit again licensed to AFAC the CrossFit and Fight Gone Bad marks for use in connection with charitable fundraising events to be conducted through CrossFit's licensed affiliates under the supervision of CrossFit's certified trainers. CrossFit's license was based on AFAC's representation that it would contact affiliates directly to solicit participation in the CrossFit-licensed event.

133.

AFAC posted information about "2008 CrossFit Fight Gone Bad" on the website www.kintera.org. *See* Exhibit 8.

134.

Various CrossFit affiliates participated in the 2008 CrossFit Fight Gone Bad event on September 27, 2008. Members of CrossFit affiliates were able to donate money to AFAC through the website athletes.kintera.org. Participants in the 2008 CrossFit Fight Gone Bad event competed in the Fight Gone Bad workout.

**PAGE 21 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

135.

Information about 2008 CrossFit Fight Gone Bad appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on September 2, 2008, September 10, 2008, September 18, 2008, September 25, 2008, and September 29, 2008. *See* Exhibit 9. These postings were placed on the CrossFit affiliate blog by CrossFit employee Lisbeth Darsh.

136.

CrossFit affiliates were also allowed to post information about 2008 CrossFit Fight Gone Bad on their licensed domain names, and most participating CrossFit affiliates did.

<u>CrossFit's License of Marks to Sportsgrants, Inc.</u>

137.

On November 3, 2008, The CrossFit Foundation, Inc. was founded as a Delaware non-profit corporation.

138.

In November 2008, following the completion of the 2008 CrossFit Fight Gone Bad and the formation of The CrossFit Foundation, Inc., CrossFit offered Scott Zagarino a complimentary CrossFit Level 1 certification class.

139.

On or about March 31, 2009, Sportsgrants created a draft license agreement related to the CrossFit and Fight Gone Bad marks and transmitted the draft agreement via electronic mail to CrossFit employee Thomas Crubaugh. A copy of the draft license agreement is attached as Exhibit 10. The agreement was not executed by CrossFit before the Fight Gone Bad IV event.

140.

In 2009, CrossFit licensed to Sportsgrants the CrossFit and Fight Gone Bad marks for use in connection with charitable fundraising events to be conducted through CrossFit's licensed affiliates under the supervision of CrossFit's certified trainers. CrossFit's license was based on Sportsgrants' representation that it would contact affiliates directly to solicit participation in the

**PAGE 22 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF**
**DEFENDANT CROSSFIT, INC.**

CrossFit-licensed event.  CrossFit's license was also based on its experience working with Sportsgrants founders Scott Zagarino and Greta Rose Zagarino, who were CrossFit's contacts at AFAC.

141.

CrossFit monitored Sportsgrants' use of the licensed marks, CrossFit and Fight Gone Bad, to ensure that Sportsgrants' use of the marks was consistent in quality with AFAC's previous use of the marks.  It was.

142.

Sportsgrants posted information about "Fight Gone Bad IV" on the website www.fgb4.org.

143.

Various CrossFit affiliates participated in the Fight Gone Bad IV event on September 26, 2009.  Participants in the Fight Gone Bad IV event competed in the Fight Gone Bad workout at CrossFit affiliates under the supervision of CrossFit-certified instructors.

144.

Information about Fight Gone Bad IV appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on September 1, 2009, September 4, 2009, September 8, 2009, September 11, 2009, September 14, 2009, September 15, 2009, September 16, 2009, September 17, 2009, September 18, 2009, September 19, 2009, September 20, 2009, September 21, 2009, September 22, 2009, September 24, 2009, September 25, 2009, and September 26, 2009.  *See* Exhibit 11.  These postings were placed on the CrossFit affiliate blog by CrossFit employee Lisbeth Darsh.

145.

Information about Fight Gone Bad IV also appeared on the main www.crossfit.com page on September 6, 2009 in the form of a link to the www.fgb4.org website and various promotional videos and on September 25, 2009 in the form of a link to the Prostate Cancer Foundation

**PAGE 23 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

(www.pcf.org), www.fgb4.org website, and an article about Fight Gone Bad IV. *See* Exhibit 12. This link was posted by CrossFit cofounder and co-owner Lauren Glassman.

146.

CrossFit affiliates were also allowed to post information about Fight Gone Bad IV on their licensed domain names, and most participating CrossFit affiliates did.

147.

On February 9, 2010, CrossFit employee Lynne Pitts delivered to Scott Zagarino, by e-mail, a revised "Licensing Agreement" document, electronically signed by Greg Glassman, granting a non-exclusive license of CrossFit's CrossFit and Fight Gone Bad marks to Sportsgrants. A copy of the Licensing Agreement is attached as Exhibit 13.

148.

On February 9, 2010, Scott Zagarino acknowledged receipt of the Licensing Agreement by sending an e-mail to Lynne Pitts stating "I thank you, Greta Rose thanks you, and Rosemary-the-pit bull thanks you. Wooohooo!  Scott"

149.

Sportsgrants posted information about "Fight Gone Bad 5" on the website www.fgb5.org.

150.

Various CrossFit affiliates participated in Fight Gone Bad 5 event on September 25, 2010. Participants in the Fight Gone Bad 5 event competed in the Fight Gone Bad workout at CrossFit affiliates under the supervision of CrossFit-certified instructors.

151.

Information about Fight Gone Bad 5 appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on August 3, 2010, August 12, 2010, August 17, 2010, August 22, 2010, August 27, 2010, September 2, 2010, September 3, 2010, September 11, 2010, September 15, 2010, September 16, 2010, September 21, 2010, September 22, 2010, September

**PAGE 24 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

23, 2010, September 24, 2010, and September 25, 2010. *See* Exhibit 14. These postings were placed on the CrossFit affiliate blog by CrossFit employee Lisbeth Darsh.

152.

Information about Fight Gone Bad 5 also appeared on the main www.crossfit.com page on September 21, 2010, September 23, 2010, and September 25, 2010. *See* Exhibit 15. This link was posted by CrossFit cofounder and co-owner Lauren Glassman.

153.

CrossFit affiliates were also allowed to post information about Fight Gone Bad 5 on their licensed domain names, and most participating CrossFit affiliates did.

154.

Sportsgrants posted information about "Fight Gone Bad 6" on the website www.fgb6.org.

155.

Various CrossFit affiliates participated in the Fight Gone Bad 6 event on September 17, 2011. Participants in the Fight Gone Bad 6 event competed in the Fight Gone Bad workout at CrossFit affiliates under the supervision of CrossFit-certified instructors.

156.

Information about Fight Gone Bad 6 appeared on the CrossFit affiliate blog, www.crossfit.com/cf-affiliates, on September 4, 2011, September 11, 2011, and September 16, 2011. *See* Exhibit 16. These postings were placed on the CrossFit affiliate blog by CrossFit employee Lisbeth Darsh.

157.

Information about Fight Gone Bad 6 also appeared on the main www.crossfit.com page on September 1, 2011, September 4, 2011, September 7, 2011, September 9, 2011, September 12, 2011, September 14, 2011, September 16, 2011, September 17, 2011, September 18, 2011, and September 20, 2011. *See* Exhibit 17.

**PAGE 25 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

158.

A nine-page article about Fight Gone Bad 6 appeared in the September 2011 *CrossFit Journal* and encouraged participation in the event. *See* Exhibit 18.

159.

CrossFit affiliates were also allowed to post information about Fight Gone Bad 6 on their licensed domain names, and most participating CrossFit affiliates did.

<u>CrossFit's Termination of Sportsgrants' License to Use The Marks</u>

160.

In or around October 2011, Sportsgrants instructed a CrossFit affiliate, CrossFit London, via a cease-and-desist letter from its attorney, that it could not host a Fight Gone Bad fundraising event to support the Prostate Cancer Centre of London (Canada).

161.

Upon reviewing the correspondence sent to CrossFit London, CrossFit learned that Sportsgrants had, in its own name, registered the Fight Gone Bad mark in International Classes 35 and 36.

162.

On or around October 15, 2011, CrossFit's general counsel, Dale Saran, sent an e-mail to Sportsgrants' counsel, Harvey Mechanic, demanding that Sportsgrants assign to CrossFit its fraudulently-obtained federal service mark registration for FIGHT GONE BAD in International Classes 35 and 36.

163.

On or around November 15, 2011, Sportsgrants' counsel, Timothy Gorry, sent a letter to Mr. Saran proposing that Sportsgrants would assign its federal service mark registration for FIGHT GONE BAD in International Classes 35 and 36 to CrossFit "in exchange for a license agreement through which Sportsgrants will maintain the exclusive right to use the Fight Gone

**PAGE 26 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

Bad mark in connection with charitable and fundraising events for 10 years, with two consecutive 10 year license renewal options."

164.

On or around November 28, 2011, Mr. Saran sent Mr. Gorry a letter terminating Sportsgrants' license to use the CrossFit and Fight Gone Bad marks.  *See* Exhibit 19.

165.

Upon information and belief, Sportsgrants has continued to use the CrossFit and Fight Gone Bad marks after receiving actual notice of CrossFit's termination of its license of these marks to Sportsgrants.

166.

Sportsgrants' use of the CrossFit and Fight Gone Bad marks is not authorized by CrossFit.

## FIRST COUNTERCLAIM

(Violation of Lanham Act § 32)

167.

CrossFit realleges paragraphs 1 through 166.

168.

CrossFit owns a valid and subsisting U.S. service mark registration for CROSSFIT in International Class 41 for fitness training.

169.

Pursuant to declarations filed by CrossFit on August 11, 2011, U.S. Service Mark Reg. No. 3,007,458 is incontestable.

170.

CrossFit has terminated Sportsgrants' license to use the federally-registered CROSSFIT mark.

**PAGE 27 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

171.

Despite CrossFit's termination of its license of the CrossFit mark to Sportsgrants, Sportsgrants continues to use the CrossFit mark in connection with fitness services and closely-related charitable fitness events.

172.

Sportsgrants' continued use of the CrossFit mark is intended to cause consumers to mistakenly believe that Sportsgrants' fitness services and closely-related charitable fitness events are still licensed and authorized by CrossFit and/or its licensed affiliates.

173.

Sportsgrants' ongoing use the federally-registered CROSSFIT mark in interstate commerce without CrossFit's consent has caused consumer confusion, mistake, and/or deception, in violation of 15 U.S.C. § 1114(1)(a).

174.

Sportsgrants' ongoing use the federally-registered CROSSFIT mark in interstate commerce without CrossFit's consent is likely to continue to cause consumer confusion, mistake, and/or deception, in violation of 15 U.S.C. § 1114(1)(a).

175.

Sportsgrants' services are highly related to CrossFit's CrossFit-branded services in that they simply add a fundraising request to the services.

176.

Sportsgrants' services are highly related to CrossFit's CrossFit-branded services because they use identical trade channels to distribute information and solicit participation.

177.

Unless the Court grants permanent injunctive relief, Sportsgrants will continue to use the CrossFit mark in connection with fitness services and closely-related charitable fitness events.

**PAGE 28 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

## SECOND COUNTERCLAIM

(Breach of License Agreement)

178.

CrossFit realleges paragraphs 1 through 177.

179.

CrossFit and Sportsgrants entered into a license agreement.  CrossFit terminated the license agreement.  In breach of the license agreement, Sportsgrants continues to use the CrossFit and Fight Gone Bad marks.

180.

After CrossFit terminated the license agreement, Sportsgrants collected money and profited from its unlawful continued use of the marks.  Sportsgrants must disgorge all such funds.

181.

Pursuant to the license agreement, CrossFit is entitled to recover its reasonable attorneys' fees.

## THIRD COUNTERCLAIM

(Violation of Lanham Act § 43(a))

182.

CrossFit realleges paragraphs 1 through 181.

183.

CrossFit has used the Fight Gone Bad marks in connection with fitness services since at least as early as 2002.

184.

Based on CrossFit's nationwide use of the Fight Gone Bad mark in interstate commerce in connection with fitness services, CrossFit owns enforceable rights in the FIGHT GONE BAD mark for fitness services and related goods and services.

**PAGE 29 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

185.

CrossFit has used the Fight Gone Bad mark in connection with charitable fundraising events since at least as early as 2006 through licensees, including affiliates, AFAC, and Sportsgrants.

186.

All licensed uses of the Fight Gone Bad mark in connection with charitable fundraising events inure to the benefit of CrossFit and the goodwill associated with the use of the Fight Gone Bad mark is owned exclusively by CrossFit.

187.

CrossFit has terminated Sportsgrants' license to use the CrossFit and Fight Gone Bad marks.

188.

Despite CrossFit's termination of its license of the CrossFit and Fight Gone Bad marks to Sportsgrants, Sportsgrants continues to use the CrossFit and Fight Gone Bad marks in connection with fitness services and closely-related charitable fitness events.

189.

Sportsgrants' continued use of the CrossFit and Fight Gone Bad marks is intended to cause consumers to mistakenly believe that Sportsgrants' fitness services and closely-related charitable fitness events are still licensed and authorized by CrossFit and/or its licensed affiliates.

190.

Sportsgrants' ongoing use of the CrossFit and FIGHT GONE BAD marks in interstate commerce without CrossFit's consent has caused consumer confusion, mistake, and/or deception, in violation of 15 U.S.C. § 1125(a)(1).

**PAGE 30 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

191.

Sportsgrants' ongoing use the CrossFit and Fight Gone Bad mark in interstate commerce without CrossFit's consent is likely to continue to cause consumer confusion, mistake, and/or deception, in violation of 15 U.S.C. § 1125(a)(1).

192.

Sportsgrants' services are highly related to CrossFit's CrossFit-branded services in that they simply add a fundraising request to the services.

193.

Sportsgrants' services are highly related to CrossFit's CrossFit-branded and Fight Gone Bad-branded services because they use identical trade channels to distribute information and solicit participation.

194.

Unless the Court grants permanent injunctive relief, Sportsgrants will continue to use the CrossFit and Fight Gone Bad marks in connection with fitness services and closely-related charitable fitness events.

## FOURTH COUNTERCLAIM

(Cancellation of U.S. Reg. No. 4,017,046)

195.

CrossFit realleges paragraphs 1 through 194.

196.

Sportsgrants obtained U.S. Service Mark Registration No. 4,017,046 for the mark FIGHT GONE BAD in International Class 35 for charitable services, namely, organizing and conducting charitable athletic events that promote public awareness of the importance of fundraising for charities and in International Class 36 for charitable services, namely, organizing and conducting athletic fundraising events for charities (the "Registration") on August 23, 2011.

**PAGE 31 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT CROSSFIT, INC.**

197.

In connection with the Registration, on August 5, 2010, Sportsgrants Chief Operation Officer Greta Zagarino hand signed a sworn declaration stating, in pertinent part, "to the best of [her] knowledge, and belief, no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/service of such other person, to cause confusion, or to cause mistake, or to deceive."

198.

Upon information and belief, on August 5, 2010, Greta Zagarino was aware that CrossFit had the right to use the Fight Gone Bad mark in commerce in connection with fitness services and fitness events.

199.

Upon information and belief, on August 5, 2010, Greta Zagarino was aware that Sportsgrants' alleged Fight Gone Bad mark was a direct copy of CrossFit's identical Fight Gone Bad mark.

200.

Upon information and belief, on August 5, 2010, Greta Zagarino knew that Sportsgrants' alleged Fight Gone Bad-branded charitable athletic events fully incorporated CrossFit's Fight Gone Bad-branded fitness services, and were therefore highly related.

201.

Ms. Zagarino's sworn declaration was knowingly false.

202.

Ms. Zagarino's false declaration induced the U.S. Patent and Trademark Office to grant the Registration.

**PAGE 32 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

203.

On June 8, 2011, Greta Zagarino signed a sworn declaration that Sportsgrants first used the Fight Gone Bad mark in commerce on July 1, 2006.

204.

Upon information and belief, Sportsgrants did not use the Fight Gone Bad mark in commerce on or before July 1, 2006.

205.

CrossFit did not consent to Sportsgrants' registration of the Fight Gone Bad mark.

206.

On December 2, 2011, CrossFit filed Cancellation No. 92054872 with the Trademark Trial and Appeal Board seeking cancellation of the Registration.

207.

On February 14, 2012, the Trademark Trial and Appeal Board suspended Cancellation No. 92054872 pending the Court's rulings in this proceeding.

208.

The Registration is void because the applicant, Sportsgrants, did not own the Fight Gone Bad mark at the time it filed its application to register FIGHT GONE BAD, in violation of 37 C.F.R. § 2.71(d).

209.

The Registration is not valid because the registered mark resembles a mark previously used in the United States by CrossFit and not abandoned and is likely, when used on or in connection with the recited services, to cause confusion, to cause mistake, or to deceive, in violation of 15 U.S.C. § 1052(d).

**PAGE 33 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

210.

The Registration is not valid because the registered mark is uniquely and unmistakably associated with CrossFit and falsely suggests a connection with CrossFit, in violation of 15 U.S.C. § 1052(a).

211.

The Registration is void because it was obtained through the knowingly-false sworn declaration of Greta Zagarino regarding Sportsgrants' exclusive right to use the mark.

212.

The Registration is not valid because it was obtained through the knowingly-false sworn declaration of Greta Zagarino regarding the first-use date of the mark.

213.

The Registration carries a presumption of validity and enforceability and, therefore, the continued registration of the Registration is detrimental to CrossFit and contrary to CrossFit's exclusive ownership of the Fight Gone Bad mark.

214.

Unless the Court cancels U.S. Reg. No. 4,017,046, Sportsgrants will continue to own a void and invalid service mark registration in derogation of CrossFit's rights in the Fight Gone Bad mark.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**PAGE 34 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**

## FIFTH COUNTERCLAIM

(Accounting)

215.

CrossFit realleges paragraphs 1 through 214.

216.

CrossFit permitted Sportsgrants to use the licensed CrossFit and Fight Gone Bad marks based on Sportsgrants' representation that only a minimal amount of monies raised would be

used to offset costs of the event, that at least 90% of gross proceeds would be distributed to charitable organizations, and that Sportsgrants would retain at most 10% of the gross proceeds.

217.

CrossFit cannot ascertain the total amount of money collected by Sportsgrants from licensed event, the total amount of money due from Sportsgrants to charitable organizations, or whether the proper amount of money has been paid to charitable organizations without an independent accounting of all proceeds received by Sportsgrants with respect to all Fight Gone Bad charitable events.

218.

CrossFit demands an independent accounting from Sportsgrants regarding the aforementioned acts.  Sportsgrants refuses to render an independent accounting and pay such sum.

## **JURY DEMAND**

CrossFit hereby demands a trial by jury.

////

////

////

////

**PAGE 35 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
                 DEFENDANT CROSSFIT, INC.**

WHEREFORE, CrossFit prays for judgment as follows:

1.      That Sportsgrants take nothing on its Complaint;

3.      For an award of costs and attorneys' fees as to the claims asserted by Sportsgrants and on the counterclaims asserted by CrossFit;

4.      For an award of damages in accordance with proof at trial;

5.      For permanent injunctive relief prohibiting Sportsgrants from using the CrossFit and Fight Gone Bad marks;

6.      Disgorging all revenue or income Sportsgrants has obtained from the unlicensed use of the CrossFit and Fight Gone Bad mark;

7.      For cancellation of U.S. Reg. No. 4,017,046; and

8.      For such other relief as the Court may deem proper.

DATED this 24th day of February, 2012.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By:  /s/Timothy S. DeJong
     **Robert A. Shlachter,** OSB No. 911718
     Email: rshlachter@stollberne.com
     **Timothy S. DeJong**, OSB No. 940662
     Email: tdejong@stollberne.com
     **Jacob S. Gill**, OSB No. 033238
     Email: jgill@stollberne.com

209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**-And-**

**Joel R. Feldman** (Application pending *pro hac vice*)
GREENBERG TRAURIG, LLP
3290 Northside Parkway, Ste. 400
Atlanta GA  30327
Telephone:  678.553.4778
Facsimile: 678.553.4779
Email:  feldmanjoel@gtlaw.com

**Attorneys for Defendant CrossFit, Inc.**

**PAGE 36 - ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT CROSSFIT, INC.**